Commonwealth Berkeley Associates, a trust, William B. Cohen and Ann R. Cohen, trustees v. Commissioner.
Commonwealth Berkeley Assocs. v. Commissioner
Docket No. 30233.
United States Tax Court
1952 Tax Ct. Memo LEXIS 267; 11 T.C.M. (CCH) 322; T.C.M. (RIA) 52089; April 4, 1952
*267 A part of the mortgage debt of the petitioner was cancelled by the creditor, without donative intent. The petitioner was insolvent before and after the cancellation. Held, that no taxable income was realized as the result of the cancellation. George B. Lourie, Esq., and Arnold R. Cutler, Esq., for the petitioner. Lester H. Salter, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax for the fiscal year ended August 31, 1945, in the amount of $1,949.14. Most of this amount results from inclusion in income of the amount of $7,087.50 representing a cancellation of indebtedness. Such inclusion is the only error alleged by the petitioner. Findings of Fact The petitioner is a real estate trust which was organized in 1925 under the laws of Massachusetts. Its principal place of business is at 260 Berkeley Street, Boston, Massachusetts. Its income tax return for the fiscal year ended August 31, 1945, was filed with the Collector of Internal Revenue at Boston. In 1925, the petitioner executed a mortgage on land at 50-52 Commonwealth Avenue, Boston, to secure the payment of $600,000 to *268 an individual named Rudnick. The amount advanced by Rudnick, together with funds comprising the petitioner's capital, was used to defray the cost of the land at 50-52 Commonwealth Avenue, and of constructing a building thereon. The building constructed was an apartment building which contained 40 apartments of three and four rooms each, of the so-called luxury type. On completion of the building, the apartments were rented at annual rents ranging from $1,800 to $3,600 each. Rudnick advanced to the petitioner approximately $650,000. In 1926, upon completion of construction of the building, the petitioner borrowed $400,000 from the Boston Five Cents Savings Bank, herein called the bank. That loan was secured by a first mortgage on the land and building. The proceeds of the loan were used to pay off an equivalent amount of the prior construction mortgage. A new second mortgage in the amount of $250,000 was executed in favor of Rudnick to cover the balance of his advances. Between 1926 and 1931, the petitioner made payments of interest only on the mortgage held by the bank. Between 1931 and December, 1939, the petitioner made some payments of principal and interest to the bank, so *269 that on December 30, 1939, the remaining balance of the mortgage held by the bank was $354,250. During the years mentioned, there were a number of conferences and extended negotiations between the petitioner and the bank concerning the payment of the mortgage. On December 30, 1939, the petitioner borrowed $300,000 from an insurance company on a new first mortgage on the Commonwealth Avenue property. The proceeds of that loan were turned over to the bank in partial satisfaction of the mortgage held by it. The petitioner also executed and delivered to the bank a new 10-year note in the amount of $54,250 secured by a second mortgage. The note was noninterest bearing. Payments on principal were to be made in amounts of $1,500 in each of the second and third years, and $2,000 in each subsequent year until maturity. Thereafter and prior to December 29, 1944, the petitioner made payments on account of principal on the mortgage held by the insurance company and also on the mortgage by the bank. On that date the balance on the mortgage held by the insurance company was $255,430.08, and the balance on the mortgage held by the bank was $47,250. For about six months prior to that date, the *270 petitioner had been negotiating with the bank in an effort to secure some rearrangement of the second mortgage and the payment of some or all of it at less than the balance of the face amount. On December 29, 1944, the insurance company increased the existing balance of its loan, secured by the first mortgage, from $255,430.08 to $285,000, and advanced to the petitioner the amount of the increase, $29,569.92. Out of this amount, the petitioner paid to the bank $25,162.50 in cash, and it executed and delivered to the bank a new second mortgage and note in the amount of $15,000, bearing three per cent interest, payable in four years. The bank thereupon discharged the existing second mortgage on which the unpaid balance was $47,250. The bank had no donative intent in scaling down the petitioner's indebtedness to it in the amount of $7,087.50. At December 31, 1944, the Commonwealth Avenue property was carried on petitioner's books in the gross amount of $738,761.56, against which there was a reserve for depreciation in the amount of $264,919.95, leaving a net figure of $473,841.61. Using the figure of $473,841.61 as the value of the Commonwealth Avenue property, the petitioner's net *271 worth was $129,576.36. The fair market value of the Commonwealth Avenue property at December 29, 1944, was not in excess of $340,000. The petitioner was insolvent prior to its transaction with the bank on December 29, 1944, and it was insolvent after that transaction was completed. The reduction by the bank of the petitioner's indebtedness to it in the amount of $7,087.50 did not result in the realization of income by the petitioner. Opinion ARUNDELL, Judge: The petitioner's mortgage debt to the bank was scaled down by the bank in 1944 by the amount of $7,087.50. There is evidence that the creditor bank had no donative intent in cancelling the petitioner's debt, and so the case does not come within the principle of Helvering v. American Dental Co., 318 U.S. 322. There being no element of gift, and no claim being made for exclusion under Internal Revenue Code section 22 (b) (9), the case must turn on the factual question of the petitioner's solvency. This is because of the well established rule that where an insolvent debtor satisfies a portion of his debts at less than face value without thereby becoming solvent, no taxable income is realized. *272 Porte F. Quinn, 31 B.T.A. 142; Madison Railways Co., 36 B.T.A. 1106; Astoria Marine Construction Co., 12 T.C. 798. In this case the petitioner's balance sheet showed the existence of net worth of some $129,000 at the time its debt was scaled down in 1944. That figure resulted from carrying the petitioner's principal asset at a figure of $473,841.61 on its books. Three witnesses testified for the petitioner as to the fair market value of the Commonwealth Avenue property. The highest figure given by any of them was $340,000. Using that figure effects a reduction of over $133,000 in the petitioner's assets and converts the paper net worth into a deficit. The respondent attacks the evidence on the basis of the increase in the first mortgage loan by the insurance company from $255,430.08 to $285,000. There is evidence in the record that insurance companies will loan on mortgage two-thirds of the fair appraised value of real estate. Taking $285,000 as representing two-thirds of the value of the petitioner's property, the respondent argues that its fair market value was not less than $427,500. The difficulty with the respondent's position is that *273 we do not know that the particular insurance company that increased the petitioner's loan acted upon a two-thirds rule. The respondent's speculation as to this point cannot overcome the testimony of qualified witnesses directly on the point of value. We, accordingly, hold that the respondent erred in including the amount of the debt reduction in the petitioner's income. Decision will be entered under Rule 50.